Hon. ISAAC F. REDFIELD, } ASSISTANT JUDGES.
Hon. DANIEL KELLOGG, }

---

GEORGE WILLIAMS *v.* JAMES N. WILLARD.

*Boundaries of village. Proof of testimony of deceased witness. Liability of impounder for expense of keeping animals impounded with or without right.*

If, in the ordinance of selectmen establishing a village, the description of the limits and bounds of the village be sufficient to enable a surveyor to ascertain the lines and corners with certainty, it is a sufficient compliance with the requirements of the statute.

Where, in the ordinance of the selectmen establishing a village, the east and north lines of the territory included within the village were defined with certainty, but the limits of their extension were not stated, but the south line was declared to be the south line of a certain farm, and the west line was declared

XXIII.    47

Williams *v.* Willard.

to be the west line of a certain farm, and it appeared, that these lines, if extended, would meet, so as to form the southwest corner of the village, and that the west line, extended northerly, would meet the north line, as defined in the ordinance, so as to form the northwest corner, and that these lines and corners were thus capable of being ascertained with certainty, it was held, that this was a sufficient compliance with the statute, requiring the limits and bounds of the village to be defined.

Parol evidence is sufficient to establish the fact, that the selectmen gave public notice of the limits and bounds of the village, by posting up notifications thereof, as required by the statute.

The testimony of a deceased witness, at a former trial, is sufficiently proved by a witness, who testifies, that he gives the substance of the testimony of the deceased witness in his very words, but does not recollect any thing he said on cross examination, but says, that if there had been any thing in the cross examination altering the testimony in chief, he thinks he should recollect it.

There is no relation of debtor and creditor created by law between the impounder of animals under the village law and the pound keeper, in relation to the expense of keeping and feeding the animals; and in the absence of any express contract, that the impounder will pay such expense, the pound keeper has no remedy against him therefor.

And if the animals be impounded without authority of law, so that the impounder committed a trespass in taking them, it will not enable the pound keeper to recover of the impounder such expense, in an action upon book account.

BOOK ACCOUNT. The action was commenced before a justice of the peace, and came to the county court by appeal. Judgment to account was rendered in the county court, and an auditor was appointed, who reported the facts substantially as follows.

On the seventeenth day of April, 1848, the plaintiff was a pound keeper in the town of Hartland, and on that day the defendant drove to the pound, of which the plaintiff was keeper, six swine, and delivered them to the plaintiff, to be impounded, as the defendant said, under the village law. He said, at the same time, that he might proceed against them as *damage feasant*,—in which case he would notify the owner, Reuben Moore, who, as well as the defendant, resided in Hartland, and in the village known as North Hartland, at the time of the impounding, and remained there until and perhaps during the summer following. The defendant, at the time of impounding the animals, requested the plaintiff to notify Moore, that

they were impounded under the village law, and said, if he con-
cluded to take them as *damage feasant*, he would notify Moore him-
self, and directed the plaintiff not to surrender the swine, until
Moore should pay the forfeiture and all costs, expenses and im-
pounder's fees.  He said the swine would not require feeding that
night, as he had fed them with corn to catch them.  The plaintiff
notified Moore that evening of the impounding of the swine, as re-
quested by the defendant.  In the same evening the defendant noti-
fied Moore of the impounding, but did not notify him to appear and
appoint appraisers to appraise the damages, agreeably to the statute
in cases of animals impounded as *damage feasant*.  A few days
after, in conversation between the plaintiff and defendant, the de-
fendant directed the plaintiff to keep the swine as low as they would
bear, as they had not been in the habit of eating much.  He said,
at first, that they would not need feeding more than once a day, but
he said the plaintiff must not let them starve.  A few days after they
were impounded, at the defendant's house, the plaintiff asked the
defendant under what law he held the swine, and the defendant said,
under the village law.  The swine were taken by the defendant,
while they were running at large in the highway within what was
claimed by the defendant to be the village of North Hartland.  No
measures were taken for the discharge of the swine during the year,
in which the plaintiff officiated as pound keeper.  The plaintiff's
account for keeping the swine, both before and after the appeal was
taken, and which the auditor found was reasonable in amount, was
$117,43.

A question was made, whether there had been established, accord-
ing to the statute of November 11, 1819, a village in the north east
part of Hartland, embracing the territory where the swine were
taken.  It appeared, that in pursuance of an application to the
selectmen of Hartland, dated December 28, 1830, signed by more
than seven freeholders residing in the territory, or neighborhood, in
the north east part of Hartland, containing more than ten dwelling
houses, the selectmen, on the thirty first day of March, 1831, made
an ordinance for establishing the "North Village in said Hartland,"
and made return thereof to the town clerk of the town of Hartland,
and caused the same to be recorded in the town clerk's office.  The
limits and bounds of the village were described in the ordinance as

follows :—" Bounded on the east by Connecticut River, on the north by Hartford line, on the west by the west line of lands occupied by Ruggles Spooner, and on the south by the south line of lands occupied by Elizabeth Gallup." The east and north boundaries were definite and certain lines ; but the south and west lines were not protracted, so as to meet and form a corner ; and from the north end of the line of Ruggles Spooner's land to Hartford line was a distance of about one mile,—leaving that space without any designated line ; and the return furnishes no north west or south west corner. The auditor referred to the. court the question, whether this designation of the line was such an establishment of the limits and bounds of the village, as the law requires.

Upon the question, whether the selectmen ever gave public notice of the establishment of the village, by posting up notifications thereof in three public places in the village, agreeably to the statute, the auditor reported, that Charles Willard was a witness at the trial of this cause before the magistrate, and had since deceased, and that Alfred Neal, who was called as a witness by the plaintiff, before the auditor, to prove the testimony of Charles Willard before the magistrate, testified, that he heard Willard testify, but took no minutes of his testimony, but thought he could repeat the substance of his testimony in his very words,—and then proceeded to give his testimony, tending to prove that the notifications were duly posted,—but that he said that he, Neal, could not remember the reason given by Willard for remembering the circumstances, and did not recollect any thing that he said on cross examination,—that he thought he was inquired of, if he read the notices, but could not give the substance of his cross examination in the words of the witness,—but that, if there had been any thing in the cross examination altering the testimony given, he thought he should recollect it. The auditor reported, that if, in the opinion of the court, the testimony of Charles Willard was proved by Neal, then he found the fact, that the notices were posted up, as the law required.

There was no evidence to show any recognition of the village organization, except what has been above stated, and there was no evidence to show that the village was ever attempted to be vacated, or discontinued, by any act of the town authorities. The village contains, and has contained, since 1830, more than ten dwelling houses.

The plaintiff never sold the swine, nor advertised them for sale, and never sued the owner of the swine, nor made any demand upon him for the forfeiture given by the statute for not replevying or redeeming the animals, nor for his legal charges as pound keeper.

Upon these facts the county court, May Term, 1850,—HALL, J., presiding,—rendered judgment for the defendant upon the report. Exceptions by plaintiff.

*Washburn & Marsh* for plaintiff.

There was no legal evidence, that the selectmen gave due notice, as required by statute, of the establishment of the village. Although the court might presume such notice, if the village had been recognized as such from its establishment to the present time, yet the foundation for such presumption is removed by the fact, found by the auditor, that the village never was recognized, as such, from the time it was constituted, in 1830, until the defendant impounded these swine in 1848. The testimony of Charles Willard is not sufficiently proved to remove the difficulty. *Marsh* v. *Jones*, 21 Vt. 378. Although the witness Neal professed to give the very words used by Willard, yet it is evident he does not give the substance of his testimony.

We claim, as matter of law, that no legal village ever was established at North Hartland, for the reason, that no *limits and bounds* of such village were ever established by the selectmen. Slade's St. 457, § 2. *Cutting* v. *Stone*, 7 Vt. 471. The impounding was therefore illegal, and the plaintiff held the swine, not as pound keeper, but as bailee of the defendant. The plaintiff's rights are therefore the same, as they would have been, if the owner of the swine had replevied them and judgment had passed in his favor. *Phelps* v. *Campbell*, 1 Pick. 59. The plaintiff has been guilty of no neglect; for all he was required to do, either by the statute, or by the direction of the defendant, was to keep the swine, until the forfeiture and expenses were paid.

But even though the swine were legally impounded, yet, the owner having abandoned them and removed from the state, the defendant is responsible to the plaintiff for the expenses of keeping them. The plaintiff has incurred the expense through the procurement of the

defendant, and had no right to sell the swine, nor any means of procuring indemnity for the expense. He has pursued literally the directions of the defendant.

*E. Hutchinson* for defendant.

The present action cannot be maintained. No express promise is found against the defendant, and none exists by legal implication. Pound keepers, in this state, have no claim, by law, upon the impounders of animals, for their care and keeping, whether the impounding be decided to be legal, or illegal. The statute fastens that expense upon the owners of the animals, and has given an action to the pound keeper to recover for it of the owner, if the animals are not redeemed or replevied by him after forty eight hours. Rev. St. c. 88, § 10. After November 13, 1848, if not before, also, it was the duty of the plaintiff to have advertised and sold the swine, agreeably to the statute of 1848. Acts of 1848, page 20. But had the statute been silent upon the subject, and it had rested wholly upon common principles, a right of action in favor of a pound keeper against an impounder of animals, under the statute, for their keeping, no more exist, than in favor of the keeper of a jail against a committing officer for the board of a prisoner. Pounds and jails are both strictly matters of police regulation, and the keepers of each are officers of the law. We regard, therefore, the issue taken upon the legality of the impounding, before the auditor, as wholly immaterial.

The plaintiff can stand in no better position, in this action, than the owner would have done, had he replevied, or brought trespass for the impounding. Had that been done, it would have been a sufficient justification, to have shown and relied solely upon the fact, reported by the auditor, that the swine were taken up by the defendant, at the time of impounding, running at large, by the sufferance of the owner, within the limits of the highway, without reference to any village organization. Rev. St., c. 88, § 19. And though the defendant might have acted and claimed to act under the village law also, and should fail to show a technically legal organization, inasmuch as he was fully justified in impounding, under the general law, it would be a defence. *Lewis* v. *Avery et al.,* 8 Vt. 287.

But the facts reported show a legal organization of the village, sustained by competent testimony. The west line given does not extend so far, as to form a corner with the north line given, nor with the south line, as given ; but the west and and south lines protracted, (about which no two surveyors could disagree,) would enclose the village in a parallellogram.

There was sufficient proof of posting notices. The fact may legally be presumed from lapse of time, and also upon the principle, as applied to public officers, of " *omnia rite esse acta præsumuntur.*" The previous testimony of the deceased witness was sufficiently proved by Neal.

The opinion of the court was delivered by

KELLOGG, J.   The right of the plaintiff to recover for the keeping of the swine is claimed upon the ground, that no village was established in Hartland, pursuant to the statute, and embracing the place where the swine were taken, and consequently that the defendant had no authority to impound them for the cause alleged at the time of impounding them. The report, however, shows, that a proper application was made to the selectmen of Hartland ; that they, on the thirty first of March, 1831, made an ordinance for establishing the north village in Hartland, (which embraced the territory where the swine were taken,) and made return thereof to the town clerk of Hartland and caused the same to be recorded.

To the legality of the acts of the selectmen in establishing the village it is objected,—1.   That they did not define " its limits and bounds," as required by the statute, but left the west and south lines and the south west and north west corners undefined ;—2.   That no sufficient notice was given of the establishment of the village, as required by the statute.

In answer to the first objection, it is to be observed, that no question is made as to the sufficiency of the description of the north and east lines of the village, but the same are conceded to be well defined.   The south line of the village, as constituted, is declared to be the south line of lands occupied by Elizabeth Gallup, and the west line is described as the west line of lands occupied by Ruggles Spooner.   There does not appear to be any question, but that the two last mentioned lines are well defined, so far as they extend ; but

the objection is, that the south line of Mrs. Gallup's land does not extend so far west as the west line of Mr. Spooner's land ; and that the west line of Spooner's land does not extend so far north and south as to intersect the north and south lines of the village; and hence it is said, that the north west and south west corners of the village are undefined, and that this renders the ordinance of the selectmen invalid.

It is undoubtedly necessary, that the limits and boundaries should be so defined, that lines drawn in conformity therewith shall be found to inclose the territory, which is to compose the village, in order to meet the requirements of the statute. And we are of opinion, that this is sufficiently done by the ordinance of the selectmen. The *data* there given furnish the means of ascertaining the north west and south west corners of the village with perfect certainty. By extending the south line of Mrs. Gallup's land westwardly, until it meets an extension of the Spooner line, the south west corner is found ; and an extension of the west line of the Spooner land northwardly to Hartford line gives the north west corner of the village. A simple extension of these lines, as above indicated, includes the territory intended to be embraced within the village. The description is sufficient, to enable a surveyor to run out the lines around the territory composing the village ; and this, in our judgment, is a sufficient description of the limits and bounds of the village, required by the statute.

We are also of opinion, that the evidence received by the auditor to establish the fact, that the selectmen gave public notice of the limits and bounds of the village, as required by the statute, was properly received. The law neither required, that the notifications should be recorded, or preserved, nor are they presumed to be within the power of the party. Hence the only evidence, that could be reasonably expected of the posting of notifications, must be by parol. This was proved at the trial before the justice by the testimony of Charles Willard ; and he having since deceased, it was competent for the defendant to prove before the auditor the testimony of Willard at the justice trial. This was done by the testimony of Mr. Neal.

It is, however, objected, that the testimony of Neal is insufficient, inasmuch as he could not recollect the testimony given by Willard

upon his cross examination. His relation of Willard's testimony, as given in chief, was sufficient to show, that the requisite notifications were posted by the selectmen ; and Neal says, had Willard's testimony on cross examination varied his testimony in chief, he thinks he should have recollected it. This, it appears to us, was sufficient proof of the testimony of Willard, and, if believed, justified the auditor in finding the fact, that the required notice was given by the selectmen.

But it is insisted by the defendant, that in no event can this suit be maintained, upon the facts found by the auditor. If sustained, it must be upon either an express or implied promise of the defendant. The case certainly shows no express promise of the defendant to pay for the keeping of the swine; and can it be said, that the facts reported raise an *implied* promise? Do they create the relation of debtor and creditor between the parties? For if they do not, clearly this action cannot be sustained. The defendant took the swine in question, *claiming* the right to have them impounded. He delivered them to the plaintiff as pound keeper, a public officer, whose duty it was to receive them and detain them in the pound, pursuant to the requirements of the statute. The statute imposes no obligation upon the impounder to pay the keep to the pound keeper, and the directions given by the defendant, in relation to feeding the swine, imposed no additional obligation upon the plaintiff. The *law* imposed upon the pound keeper the duty of keeping and feeding the beasts committed to the pound, and there is no pretence, that the plaintiff acted in the matter, under any contract or agreement with the defendant. The direction to the plaintiff, in relation to feeding the beasts, was in substance a direction to him to discharge a duty imposed upon him by his appointment. Indeed, it can hardly be said, that the plaintiff claims, there was any *express* or *implied* undertaking of the defendant to pay for the keep of the swine; but his argument seems to place his right to recover upon the ground, that the impounding was illegal. If the impounding were illegal, the taking by the defendant was a tort. Now, if it be conceded, that the defendant had no right to impound the swine, and that in so doing he committed a trespass, we apprehend it will afford no aid in support of this suit. For notwithstanding the broad and extensive

XXIII. 48

limits sometimes claimed for the action of book account, we believe it has never been held an appropriate remedy for torts.

There is no view, which we have been able to take of the case, that will enable the plaintiff to maintain this action.

The judgment of the county court is affirmed.